## Joseph Lach, Appellee, v. Pleas Concrete Construction Company, Appellant.

### Gen. No. 17,902.

DAMAGES—*when verdict not excessive.* A verdict for $3,500 is not excessive where the evidence shows that the injuries inflicted when a plank weighing two hundred pounds fell against plaintiff's ·head` and shoulders are very serious.

Appeal from the Superior Court of Cook county; the Hon. WILL-IAM H. McSURELY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Affirmed. Opinion filed January 28, 1913. Rehearing denied February 11, 1913.

WINSTON, PAYNE, STRAWN & SHAW, for appellant; EDWARD W. EVERETT and CHARLES J. McFADDEN, of counsel.

F. W. JAROS and FRANCIS J. WOOLLEY, for appellee.

MR. JUSTICE F. A. SMITH delivered the opinion of the court.

The plaintiff, Joseph Lach, appellee, recovered a judgment of $3,500 against appellant, Pleas Concrete Construction Company, hereinafter called defendant, for personal injuries.

Defendant was the subcontractor for the concrete construction work in the roof over the boiler room of a building which Darling & Company were erecting on and prior to July 30, 1909. The boiler room was 95·feet long from east to west, and from 45 to 50 feet wide from north to south; the roof was 35 or 40 feet high. In the center of the room there were four boilers which were already in operation at the time of the accident, and one water pump machine, located at the west end of the room back of the boilers. North of the boilers there was a pile of coal along the north wall of the building from which Darling & Company's servants

were feeding the boilers.   There was also a pump or air compressor at which the plaintiff was working at the time he was injured.   It was a new one and was being installed on the east side of the boiler room about three feet from the east wall.   This compressor was about 6 or 7 feet long and extended from north to south along the east wall.

The boiler room was spanned with iron beams about 20 feet or more above the floor, running both north and south and east and west.   One of the beams ran along east and west north of the boilers, and another still farther north in the same direction about 4 feet from the north wall across the whole building.   These two beams were from 12 to 15 feet apart, and every 10 feet from east to west there were cross-beams between them.

Prior to the accident, defendant constructed the cement roof or ceiling of the boiler room upon temporary work made of 7/8" boards.   To take down this temporary work of the ceiling, defendant used a scaffold made of two horses, each about 10 feet high and 12 feet long, and sixteen planks each about 2" thick, 12" wide and 16 feet long.   The horses were set on planks which rested on the iron cross-beams; three of the planks lay on the cross-beams running east and west on the south side, and the other three on the north side on the cross-beams, and the horses were set thereon so that they ran north and south.   The horses were set about 12 feet apart.   On the top of the horses were put two planks across from east to west, and on these two other planks were placed running from north to south so that defendant's employes while working on the scaffold, could reach the temporary work constructed in the roof or ceiling.

The night before the accident, defendant's employes discovered a knot in one of the 2" planks which they were using.   They discarded this plank and replaced it with a very heavy 3" plank which weighed 200

pounds. The weight of this plank and the consequent difficulty in handling it, led to the immediate negligence which caused the accident.

On the morning of the day of the accident, July 30, 1909, plaintiff was ordered by the master mechanic of Darling' & Company, his employers, to install the compressor pump in the boiler room. At that time there were men finishing up the cement work under the compressor machine, and two men were tearing down the boards from the ceiling and throwing them down about 40 feet away from where plaintiff and the machinist were at work on the compressor. This they did with a hammer in one hand while holding the boards with the other, and then they threw the boards down alongside of the north wall of the boiler room, the boards falling about 40 feet from where plaintiff was working. While plaintiff was at work on the compressor and cleaning the same between the two fly-wheels thereof in a stooping position, with his back towards the men on the scaffold, the 3″ plank, the position of which defendant's servants were changing, was allowed to fall on the cement floor from which it fell over and struck plaintiff on his head and back, seriously injuring him.

The negligence charged in the declaration is that the servants of the defendant negligently allowed the board or plank to slip from their hands and fall upon the plaintiff.

It is insisted that plaintiff was guilty of such contributory negligence as to preclude his recovery; and that defendant was not guilty of negligence which was the proximate cause of the injury. We have examined the evidence upon these questions with care, and we do not find that the verdict of the jury is against the manifest weight of the evidence.

It is urged that the court erred in refusing instructions, and certain instructions given are pointed out as erroneous on various grounds, and that instructions tendered by the defendant were erroneously refused.

Upon a consideration of the instructions, we think that the case was properly submitted to the jury by the court by its instructions; and we think no error was committed in refusing the tendered instructions offered by the defendant. It would serve no useful purpose in this opinion to take up *seriatim* the instructions given and upon which the defendant predicates error, and the like may be said as to the refused instructions. We think no reversible error, either in giving or refusing instructions, was committed by the court.

The question of the amount of damages is pressed upon our attention, and it is claimed that the verdict is excessive. The injuries are shown by the evidence to be very serious. We do not regard a verdict of $3,500 as any too large for the injuries shown in the evidence. There is a contention that the injuries were simulated to a considerable extent. That was a question for the jury. There is some conflict in the testimony of the experts as to the extent of the injury; but, allowing for this conflict of testimony, we cannot say that the finding of the jury, that the plaintiff was seriously injured, is manifestly against the weight of the evidence. The plaintiff was on the witness stand and testified to his sensations and his condition as far as he could describe it. The jury had an opportunity to study him as a witness and to form conclusions upon the testimony of plaintiff, and the testimony of the experts, and to observe all the witnesses as they testified, —their bearing and manner upon the stand. We think the verdict as to the amount of damages should not be interfered with.

The judgment is affirmed.

*Affirmed.*